JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 14-05482 MMM (PLAx) | Date | August 25, 2014 |
|---|---|---|---|

| Title | *Ricardo Huitron v. U.S. Foods, Inc.* |
|---|---|

Present: The Honorable  MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None appearing | None appearing |

**Proceedings:** **Order Remanding Case to Los Angeles Superior Court for Lack of Subject Matter Jurisdiction**

### I. BACKGROUND

On January 14, 2014, Ricardo Huitron filed this action in Los Angeles Superior Court against U.S. Foods, Inc. ("U.S. Foods") and Hugo Jimenez.[1] On February 10, 2014, Huitron filed an amended complaint, pleading claims for retaliatory termination in violation of California Labor Code § 6310 and wrongful termination in violation of public policy against U.S. Foods, and claims for libel and slander against U.S. Foods and Jimenez.[2] On July 14, 2014, US Foods removed the action, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332 on the basis that Jimenez was fraudulently joined to defeat diversity.

On July 24, 2014, the court issued an order to show cause why the case should not be remanded for lack of subject matter jurisdiction. The court noted that the notice of removal failed to

---

[1] Notice of Removal ("Removal"), Exh. 1 (First Amended Complaint) ("Complaint"), Docket No. 1 (Jul. 14, 2014).

[2] *Id.*

establish Jimenez was fraudulently joined.[3] On July 31, 2014, U.S. Foods filed a response, asserting that Huitron could not state a libel or slander claim against Jimenez, and thus that he had been fraudulently joined.[4] U.S. Foods contends that Jimenez's statement was an opinion that is not actionable and that was both truthful and privileged.[5] Huitron filed a reply, requesting remand, on August 6, 2014. He asserts that he can state a claim for slander and libel against Jimenez.[6] For the reasons stated below, the court lacks subject matter jurisdiction, and thus remands the action to Los Angeles Superior Court.

## II. DISCUSSION

### A.     Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows a defendant to remove when a case originally filed in state court presents a federal question or is between citizens of different states and involves an amount in controversy that exceeds $75,000. See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1331, 1332(a). Only state court actions that could originally have been filed in federal court can be removed. 28 U.S.C. § 1441(a); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988), *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985), and *Libhart*, 592 F.2d at 1064). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

---

[3]Order to Show Cause, Docket No. 14 (Jul. 24, 2014).

[4]Response to Order to Show Cause, Docket No. 15 (Jul. 31, 2014).

[5]*Id.* at 1-2.

[6]Reply to Response to Order to Show Cause ("Reply"), Docket No. 16 (Aug. 6, 2014).

### B. Whether the Court Should Remand the Action to Los Angeles Superior Court

As noted, U.S. Foods contends the court has diversity jurisdiction to hear this action.[7] "The district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between . . . citizens of different States." 28 U.S.C. § 1332(a); see also *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000"). In any case where subject matter jurisdiction is premised on diversity, there must also be complete diversity, i.e., all plaintiffs must have citizenship different than all defendants. See *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267 (1806); see also *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 & n. 3 (1996).

#### 1. U.S. Foods' Citizenship

A corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The term "principal place of business" means "the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters - provided that the headquarters is the actual center of direction, control, and coordination[.]" *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). In its notice of removal, U.S. Foods alleges that it is a Delaware corporation with its principal place of business in Rosemont, Illinois.[8] U.S. Foods is thus a citizen of Delaware and Illinois.

#### 2. Huitron's Citizenship

A person is a citizen of the state in which he has his domicile, i.e., a permanent home where he intends to remain or to which he intends to return. See *Gilbert v. David*, 235 U.S. 561, 569 (1915); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return"). In the complaint, Huitron alleges only that he resides in California.[9] In its notice of removal, U.S. Foods pleads that Huitron is a California citizen.[10] It cites the fact that Huitron lived

---

[7]The court does not have federal question jurisdiction because all of Huitron's claims are state law claims that do not raise a federal question. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").

[8]Removal, ¶ 23, 25.

[9]*Id.*, ¶ 18 (citing Complaint, ¶ 1).

[10]*Id.*, ¶¶ 18-21.

in California at all times relevant to this action; that he was born in California; that he graduated from a California high school; that he attended college in California and worked for three California employers – including U.S. Foods – from 2005 to 2013; and that he currently works as a coordinator for a medical supply company in California. This suffices to establish that Huitron is a citizen of California. See *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes").

### 3. Jimenez's Citizenship

In the notice of removal, U.S. Foods alleged that Jimenez is a California citizen.[11] It asserts, however, that Jimenez's citizenship should not be taken into account because Huitron fraudulently joined him as a defendant.[12] In his reply, Huitron argues that Jimenez was not fraudulently joined, and that, as a result, the fact that he is a defendant destroys diversity.[13] The court must thus determine whether Jimenez was fraudulently joined; if he has, his citizenship must be disregarded in determining whether diversity jurisdiction exists.

The joinder of a non-diverse defendant is considered fraudulent, and the party's citizenship is disregarded for purposes of subject matter jurisdiction, "[i]f the plaintiff fails to state a cause of action against the [non-diverse] defendant, and the failure is obvious according to the settled rules of the state. . . ." *Hamilton Materials, Inc. v. Dow Chemical Co.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). "It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing *Emrich*, 846 F.2d 1193 & n. 1; *McCabe*, 811 F.2d at 1339); see also *Burden v. General Dynamics Corp.*, 60 F.3d 213, 221-22 (5th Cir. 1995) (concluding that the district court had subject matter jurisdiction where a defendant charged with intentional infliction of emotional distress had been fraudulently joined). The defendant must "prove that individuals joined in the action cannot be liable on any theory." *Ritchey*, 139 F.3d at 1318; see also *McCabe*, 811 F.2d at 1339 (stating that the removing defendant is entitled to present facts showing that the joinder is fraudulent); *Campana v. American Home Products Corp.*, No. 1:99cv250 MMP, 2000 WL 35547714, *3 (N.D. Fla. Mar. 7, 2000) ("The removing party must show, with credible evidence, that there is no possibility that a plaintiff can state a cause of action against the nondiverse defendant").

---

[11] Removal, ¶ 27.

[12] *Id.*, ¶ 12.

[13] Reply at 5-6.

"Merely showing that an action is likely to be dismissed against [a] defendant does not demonstrate fraudulent joinder. Rather, it must appear to 'a near certainty' that joinder was fraudulent. As a result, the removing defendant must establish that there is absolutely no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant. . . . Thus, that a claim against the in-state defendant is insufficiently pled does not prove clearly and convincingly that there is absolutely no possibility that the plaintiff will be able to establish a cause of action." *Amarant v. Home Depot U.S.A., Inc.*, No. 1:13–cv–00245–LJO–SKO, 2013 WL 3146809, *6 (E.D. Cal. June 18, 2013).

A defendant must prove fraudulent joinder by clear and convincing evidence. *Hamilton Materials*, 494 F.3d at 1206 (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998)). Thus, "fraudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting favorably the Fifth Circuit's decision in *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (citations omitted)); see also *West American Corp. v. Vaughan Basset Furniture*, 765 F.2d 932, 936 n. 6 (9th Cir. 1985) (stating that the court may consider affidavits, depositions, and other evidence); James W. M. Moore, MOORE'S FEDERAL PRACTICE § 102.21(5)(a) (3d ed. 2008) ("The federal court's review for fraud must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties").

Because courts must resolve all doubts against removal, a court determining whether joinder is fraudulent "must resolve all material ambiguities in state law in plaintiff's favor." *Macey v. Allstate Property and Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117 (N.D. Cal. 2002) (citing *Good v. Prudential*, 5 F.Supp.2d 804, 807 (N.D. Cal. 1998)). "If there is a non-fanciful possibility that plaintiff can state a claim under [state] law against the non-diverse defendant[,] the court must remand." *Id.*; see also *Good*, 5 F.Supp.2d at 807 ("The defendant must demonstrate that there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant"). Given this standard, "[t]here is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion." *Plute v. Roadway Package Sys., Inc.*, 141 F.Supp.2d 1005, 1008 (N.D. Cal. 2001).

To prove defamation, plaintiff must show that the defendant published a false, defamatory, and unprivileged statement that had a natural tendency to injure or that caused special damage. See *Hernandez v. First Student, Inc.*, No. CV 10-8243 SVW (FMOx), 2010 WL 5313293, *3 (C.D. Cal. Dec.16, 2010); *Smith v. Maldonado,* 72 Cal.App.4th 637, 645 (1999). Slander is oral defamation, while libel is written defamation. See *Ringler Associates Inc. v. Maryland Cas. Co.*, 80 Cal.App.4th 1165, 1180 (2000).

U.S. Foods does not attack the substance of Huitron's pleading. Instead, it asserts that his slander and libel claims fail as a matter of law. It contends that Jimenez's statement that Huitron was "dishonest" was merely an opinion that is not actionable as defamation. It further asserts that, to the

extent the statement could constitute defamation as a matter of law, it cannot be proven false.[14] Under California law, it is well settled that "[c]alling someone a liar can convey a factual imputation of specific dishonest conduct capable of being proved false, and may be actionable depending on the tenor and context of the statement." *Carver v. Bonds*, 135 Cal.App.4th 328, 346 (2005) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-20 (1990); *Weller v. Am. Broad. Companies, Inc.*, 232 Cal.App.3d 991, 1000-01 (1991)). Thus, the court cannot accept U.S. Foods' argument that the claims fail as a matter of law. U.S. Foods also contends Huitron has admitted that Jimenez's statement was not false.[15] It cites portions of Huitron's deposition testimony, in which he acknowledged that U.S. Foods prohibits cherry picking and considers cherry picking to be a dishonest act.[16] U.S. Foods failed to proffer other relevant portions of the deposition, however, in which Huitron contends that his acceptance of an assignment from another employee did not amount to cherry picking.[17] There is no dispute that Huitron accepted an assignment from another U.S. Foods employee; the parties disagree, however, as to whether that amounts to cherry picking.[18] Because Huitron did not admit that he engaged in cherry picking, he did not admit that Jimenez's statement was truthful.[19]

---

[14]Response at 10-12.

[15]Response at 3-5.

[16]*Id.*; Declaration of Kristen Agnew ("Agnew Decl."), Exh. C (Deposition of Richard Huitron ("Defendant Huitron Depo.")), Docket No. 15-1 (Jul. 31, 2014) at 243:14-19, 254:4-6.

[17]Declaration of Howard Rutten ("Rutten Decl."), Exh. B (Deposition of Ricardo Huitron) ("Plaintiff Huitron Depo."), Docket No. 18 (Aug. 6, 2014)) at 224:9-225:2. Specifically, Huitron asserts that trading assignments with employees "happen[ed] all the time," "almost on a daily basis," and that it happened so often U.S. Foods had to be aware of it. (*Id.* at 224:19-225:2.) Huitron defined cherry picking as "go[ing] to the blind box and pick[ing] assignments" out of order based on whether they were "preferential." (*Id.* at 245: 1-4, 245:23-246:8.)

[18]U.S. Foods' written cherry picking policy, although purportedly non-exhaustive, does not define accepting assignments from another employee as cherry picking. Rutten Decl., Exh. C (U.S. Foods Cherry Picking Policy).

[19]Although neither party addresses it, the court notes that Jimenez's record of discussion includes allegations that Huitron was dishonest about where he received his assignment. This appears to be distinct from allegations of cherry picking. (Rutten Decl., Exh. D.) Jimenez contends that when he asked Huitron where he got his assignment Huitron first said he got it from the blind box, and then admitted getting it from another employee. (*Id.*) Huitron expressly denies making the first statement. (Plaintiff Huitron Depo. at 434:21-435:15.) Thus, Huitron did not admit to being dishonest on this basis.

U.S. Foods also contends that Huitron cannot state a defamation claim because Jimenez's statements were privileged under California Civil Code § 47(c). Huitron counters that Jimenez acted with malice, and hence that the privilege is unavailable.[20] Huitron cites his deposition testimony, in which he stated that Jimenez said he was dishonest to retaliate against him for contacting the Occupational Safety and Health Administration ("OSHA").[21] Such allegations are sufficient to plead malice. See *Noel v. River Hills Wilsons, Inc.*, 113 Cal.App.4th 1363, 1370 (2003) ("The malice necessary to defeat a qualified privilege is 'actual malice' which is established by a showing that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights" (internal citations and quotation marks omitted)). Finally, U.S. Foods asserts that Huitron consented to any defamation by Jimenez.[22] It maintains that Jimenez's allegedly defamatory statement was first made only to Huitron, and was repeated thereafter only because Huitron filed a grievance and requested a meeting to discuss the circumstances around his termination.[23] Consent, however, is an affirmative defense to defamation, not an element of the prima facie case. See RESTATEMENT (SECOND) OF TORTS § 583 (1997). Hence it is not considered in determining whether a plaintiff can state a claim for purposes of fraudulent joinder.[24]

In sum, U.S. Foods has not carried its burden of proving that "there is absolutely no possibility" Huitron can prove his slander claim against Jimenez. It has thus failed to show that

---

[20]Malice is also a defense to the "manager's privilege." See *Kacludis v. GTE Sprint Communications Corp.*, 806 F. Supp. 866, 872 (N.D. Cal. 1992). Thus, U.S. Food's argument concerning this privilege fails for the same reasons its Civil Code § 47(c) argument fails.

[21]Reply at 12; Plaintiff Huitron Depo. at 514:18-19.

[22]Response at 12-13.

[23]*Id.*

[24]Even if the court were to examine the issue of consent, U.S. Foods has not established that Huitron consented. Although it cites *Royer v. Steinberg*, 90 Cal.App.3d 490, 498 (1979), as support for its argument, *Royer* does not demonstrate that Huitron consented. The *Royer* court explained that "[w]here a defendant, not in the presence or hearing of third persons, makes a slanderous statement about a plaintiff, and thereafter at the request of the plaintiff repeats the statement in the presence and hearing of third persons, such repetition cannot be made the basis of an action for slander" because the plaintiff is deemed to have consented to the disclosure. *Id.* at 498. The *Royer* court held that the plaintiff had consented to a defamatory statement because he received a confidential letter from his employer containing the statement that he then sent to a local newspaper for publication. *Id.* Here, Huitron did not republish Jimenez's allegedly defamatory statement, nor did he ask Jimenez to repeat the defamatory statement at the grievance meeting; he simply requested a meeting to discuss his grievance. *Royer* does not support the proposition that requesting a meeting constitutes consent to the publication of defamatory statements at that meeting.

joining Jimenez as a defendant on that claim was fraudulent. See *Morales v. Gruma Corp.*, CV 13-7341 CAS (FFMx), 2013 WL 6018040, *4 (C.D. Cal. Nov. 12, 2013) ("Like the statement about termination 'due to performance' in *Umamoto*, plaintiff's allegations regarding statements made by Ynez and Bolanos are sufficiently specific to raise a 'nonfanciful possibility' that plaintiff can state a claim for defamation in Los Angeles Superior Court").

U.S. Foods also contends that Huitron cannot state a libel claim. It cites the fact that Huitron admitted at deposition that he was presently unaware of any document in which Jimenez made a defamatory statement about him.[25] In his reply, Huitron contends that Jimenez defamed him in writing, and that the statement was subsequently repeated and republished by other individuals.[26] He proffers as exhibits Jimenez's record of discussion and two purported republications thereof – one by Elizabeth Villegas in a global compliance report, and another by Enrique Ramirez in a written statement made at the grievance meeting.[27] None of the purported republications appears to contain Jimenez's allegedly defamatory statement. The global report merely refers to the fact that Huitron said he had been suspended for lying. Ramirez's report contains no reference to Huitron's purported dishonesty. Nonetheless, remand is appropriate if there is a "non-fanciful possibility that plaintiff can state a claim." Huitron maintains that Jimenez published a defamatory statement about him in writing, and that that statement was republished. The record of discussion, which unquestionably contains the allegedly defamatory statement, may well be enough on its own to establish libel.[28] Cf. *Umamoto v. Insphere Ins. Solutions, Inc.*, 13-CV-0475-LHK, 2013 WL 2084475, *6 (N.D. Cal. May 14, 2013) (remanding a defamation action to state court and concluding there was no fraudulent joinder where substance of the plaintiff's defamation claim was that her former employer falsely stated that it was terminating plaintiff "due to performance" and she was allegedly required to republish the statement in applications and interviews for new employment). For these reasons, the court is not persuaded that there is no possibility Huitron can state a libel claim. Compare *Morales*, 2013 WL 6018040 at *4. Consequently, it concludes that U.S. Foods has failed to show Jimenez's joinder as a defendant onto the libel claim was fraudulent.

Because U.S. Foods' assertion that Huitron's claims against Jimenez fail as a matter of law is not persuasive, and because it has not shown that there is no possibility Huitron can state a slander or libel claim against Jimenez, it has failed to demonstrate by clear and convincing evidence that Jimenez was fraudulently named as a defendant. Consequently, the court is not free to disregard Jimenez's citizenship in determining whether diversity jurisdiction exists. Because Huitron and Jimenez are both California citizens, there is not complete diversity of citizenship. The court must therefore remand the case to Los Angeles Superior Court. 28 U.S.C. § 1447(c) ("If at any time

---

[25]Defendant Huitron Depo. at 511:8-12.

[26]Reply at 13-14.

[27]See Reply, Exh. B, D, F; Plaintiff Huitron Depo. at 512:12-18.

[28]Reply, Exh. D.

before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").

### III. CONCLUSION

For the reasons stated, the court lacks subject matter jurisdiction to hear this action. The clerk is thus directed to remand the action to Los Angeles Superior Court forthwith.